Good morning, counsel. Our next case for today is case number 4151001, and that is Edgar County Bank v. Striegel. And for the appellant, we have Mr. Stephen Beckett and Mr. Chad Beckett. It's my understanding Mr. Stephen Beckett will be arguing. And then for the appellee, we have Ms. Wieler. Thank you, counsel. You may proceed. Good morning, Your Honors. Presiding Justice White, I have a piece of court. This appeal asks the court to address the interpretation and application of the statute of limitations under the public accounting provisions of 5-13-214.2. We believe the review is de novo. I don't think there's any dispute about this. This was a motion to dismiss in which the statute of limitations argument was invoked, and Judge Foley accepted the defendant's position on the facts that had been presented to her by pleadings and affidavits. And we urge that Judge Foley was wrong. Every limitation statute has an element of injury, wrongful causation, and the possibility of extension by reasonable efforts to determine the cause. The public accounting statute is somewhat different. That limitation statute is somewhat different than others because the focus here is on acts or omissions. Because an action based on tort, which this is, it's a statutory tort, Illinois has recognized that accountants may be held civilly liable for damages under certain circumstances. There's a particular accountancy act that allows that to happen. And then actions based upon that tort for an act or omission in the performance of professional services shall be commenced within two years from the time the person bringing the action knew or should reasonably have known of such act or omission. And then there's a repose that has to be brought at least five years after that act or omission. And again, it applies to all causes of action that accrue. So the bank, Edgar County Bank, has a debtor, RTA and its principals, that are asking for an extension of credit, additional extension of credit. And the bank receives an amended 2009 tax return that it relies upon for that extension of credit. That's in October of 2009. I'm sorry, 2010. And in January of 2011, things fall apart. One of the principals is killed or commits suicide. The accountants are brought in by the other principals in the firm. The accountants report to the principals and to a representative of the bank, Tom Murray, that there have been some underhanded dealings going on that have been going on for years and that even false tax returns have been filed. The bank begins its proceedings against the debtor, the remaining representatives of the debtor, who go into bankruptcy. The bank, in bankruptcy, attempts to obtain all of the tax returns from the debtor. They're not successful. The bank submits a subpoena to the accountants. The accountants respond and say, you can come to our office. The bank's attorney goes to the office in January of 2012. According to the affidavit of the bank's attorney, sees no tax returns. So the tax return that ultimately becomes an issue, the bank's attorney says, I didn't see it then. The debtor never produces the tax return, and so the bank, in the bankruptcy proceeding, issues a second subpoena and this time asks of the accountants specifically, give us the tax returns. That's correct. But it wasn't until January 7th of 2013 that the bank, through its attorney, actually received a copy of the first return, the 2009 return. And so until that time, the bank would have had no knowledge whatsoever of the accountants' knowledge of the gross change within 30 days, because this is a return that had been prepared, I think it's September of 2013, whereas the second return is October 8th of 2010. And so we're talking in a period of less than a month, unbelievable change in the financial status of this organization. And how in the world the bank could suggest that the accountants had knowledge of the misrepresentation and falsehood until it saw those two returns side by side is beyond the bank. Well, what about that meeting that took place after the suicide? But you know, at that meeting, and this is based on the accountants' affidavit, at that meeting, the accountant doesn't say, and by the way, I knew this. I knew this because I prepared the 2009 return. Oh my God, you wouldn't have believed it, the difference within 30 days. There's nothing in the record to infer that that sort of thing happened. As a matter of fact, if you look closely at the affidavits, he doesn't contest. Those affidavits don't contest the bank's attorney's affidavit, which is to the effect, the first time I saw that return was January 7th, 2013. That's the very first time I saw it. That's a factual question. That's a factual question. You know, I guess the issue under this is, when did the bank as plaintiff, what day did the bank as plaintiff know or should reasonably have known of the errors or omissions of the accountants? Not that there was a fraud. That's not it. That RTA committed fraud. Unfortunately, accountants receive all kinds of information from clients, and I suppose they have to, don't they have to accept it based on the representation? Accountants often put disclaimers on the work that they do that it's based on the information that the clients have prepared them, have given to them. But certainly, in this circumstance, if in fact Mr. Knobloch in his affidavit had said, I gave that return to the bank's attorney in January of 2012, that would be a different factual situation. I guess I'm wondering, were there occasions where a red flag should have come up? Because when we talk about should have reasonably known, we're not talking about when you definitively know you've been wrong. We're talking about when you should have suspicions and start checking into, hey, what's going on here? Actually not, because the bank is being lulled into this very secure feeling that the accountant is being completely forthcoming. We're working with you to try to help you solve this problem. We'll even give you an affidavit in the bankruptcy proceeding. That affidavit is the first time that the 2009 original return is mentioned, and it doesn't say its date, and it doesn't say what the accountant's reaction is. We have no idea what was going on at the accounting office. Mr. Knobloch could have just been the signatory, and two other staff members could have prepared those returns, and there was two trains passing in the night. We just don't know, because the record doesn't tell us. But Judge Foley's ruling, if you read the order that dismisses it, makes these findings a fact, and it stops in February of 2011 and completely ignores the bank's attorney's affidavit as if it didn't exist. I don't think for purposes of a motion to dismiss that you get to do that. I don't think you can weigh credibility and say, well, I'm going to believe this affidavit, but I'm going to reject that affidavit. I'm not going to rely on it at all, and it's clear that's what happened here. The other interesting thing I think about this case is the authority, and I think Judge Foley, in a well-intentioned way, applied what we would call the common law discovery rule. Injury, wrongful causation, and when should they have known? But that's not what she was tasked to do. She was tasked to follow this statute. Defendants cite these federal cases. It's wonderful to have cases from federal court. I've used them myself from time to time, but every time I come here and try to bring a federal court, I'm told, uh-uh, that's a federal case. We don't have to follow those federal cases, and I think that's good, sound reasoning. In this case, those two federal cases that are cited, those were common law fraud cases brought under diversity, and then the federal court was asked to rule on the statute of limitation, and they applied the common law discovery rule. Well, they weren't tasked with following the Illinois statute the way Illinois courts are for Illinois accountancy action, which is what this case is, and frankly, I think they're wrong, but that doesn't make any difference. I don't think you have to give them any consideration other than, well, that's nice that that's there. Our job is to interpret the statute. And unless you know something I don't know, the bank's attorneys, before we got involved in this case, looked at it. We've looked at it. Defendants certainly have had a chance. There is no cited case interpreting this statute and what it means when it talks about the bringing of an action new or should have known of the act or omission of the account. It's interesting. Compare 214.2 with 214.3, which is us, which is us lawyers when we get sued, right? And the language of 213.3 talks about the time of when you knew or should have known of the injury. So that shows us that the legislature knows how to make a distinction for each profession. And in this profession, it's the act or omission because there are so many different ways that I believe, I can assert to you, that accountants can make mistakes or make themselves civilly liable. I don't think there's only one fast and hard way that you can do it. So we ultimately suggest that is there a question about whether or not the bank was reasonably diligent? You bet. You bet. But that's a factual question. And that should go with the case. That should go with the case. You shouldn't rule as a matter of law under the circumstances of this case. But there's no possible way that the bank didn't know until within the statute of limitations. So we would ask that you reverse Judge Foley's ruling and remand the case for further proceedings. Thank you. Thank you, Mr. Beckett. You'll have time on rebuttal. Ms. Weiler? Good morning, Your Honors. May it please the Court, my name is Catherine Weiler. I represent the Defendants Appellees or the Accounting Defendants in this case. For ease of reference, I'll just refer to them as the Accounting Defendants collectively. The plaintiff's arguments are twofold. One is based on a fact issue. One is based on an interpretation of the statute. To clarify some of the facts that were just discussed to the Court, I'll focus on those first and then I'll move on to the statutory interpretation that is proposed by the other side. The fact issue, there is no disputed question of fact in this case. Plaintiff's counsel has pointed to an affidavit that was filed by Mr. Ansell. I believe the Court can find it at page C81 of the record where Mr. Ansell, who was plaintiff's counsel at the trial court level, discussed not receiving copies of this particular tax return pursuant to a subpoena that was issued in late 2011 and purportedly the documents were not included in a production that was given in 2012. In fact, plaintiff's counsel had already had the opportunity to investigate and review those files at the Accounting Defendant's offices. That's undisputed. The affidavit that describes that interaction is at page C56 of the record. One of the associates from plaintiff's counsel's office went, viewed all of the tax and accounting files that the Accounting Defendants had. They were given the opportunity to copy any of those files and they did not do so. There was some type of restriction. I'm trying to think how it was worded. Non-privileged. Yes. That's correct. All non-privileged files. Non-privileged files would include anything that would potentially be subject to attorney-client privilege similarly, but in the context of accounting malpractice. The complaint here, or the dispute I should say, concerns the actual tax return. There is nothing that suggests that the actual tax return would not have been included in those records. Certainly, it was not privileged. It's not subject to that privilege. It was filed. And there is no suggestion from the plaintiff that those documents weren't included in the files. The only time that has come up is during the appeal where the plaintiff's counsel has suggested, well, we can't prove that those documents were in those files. So, let me make sure I'm understanding you clearly. Are you disagreeing with the representation of opposing counsel as to when the bank actually received the original return that had been amended? The distinction is this, Your Honor, and I'm trying to answer the question. It's that plaintiff's counsel's office, underlying counsel's office, had access to those files, could have obtained copies of that tax return in fall of 2011. The statements made by appellate's counsel now seem to be, well, we weren't actually given a copy of that document. You didn't hand one to us until sometime in 2012, 2013. That's the distinction, is whether they had access versus whether they were actually handed a copy. So, the answer to my question is you are not disputing that. But what you're saying is they had access to it. If they had asked for it, they could have received it at that time. Exactly. That's exactly correct. So, I guess that brings me to the question of what occurred that should have led them to ask for it when they did have access. The accounting defendants in this case are, in fact, the ones who, as soon as one of Rhodes' principals committed suicide, informed the bank, we have a problem here. We've had the opportunity to look at the books. The books are not in order. There's an issue. The bookkeeper for Rhodes has informed us that the books were not accurate, that she was instructed to not keep accurate records. It wasn't a situation where the bank called in the accountants. It was a situation where the accountants went to the bank and said, we have a problem. The bank had the opportunity to review that information and proceeded to file a lawsuit against one of the principals who eventually filed for bankruptcy protection. But the bank intervened in the bankruptcy action, as one would expect. That's when the bank was investigating the scope and extent of the fraud that was involved in this case. Through that adversary proceeding in the bankruptcy court, the bank was given access to all of the accounting defendants' files, and the accounting defendants never took issue with that. They actively assisted in this investigation. And now, instead of acknowledging that the accounting defendants actively assisted in that investigation, the bank has decided to wait, wait until the accounting defendants eventually responded to additional subpoenas in the adversary proceeding, and the bank is now using that information to say, well, how could we possibly have known that the accounting malpractice defendants had any of this information? They knew because they knew there was fraud involved. They knew the scope of the fraud, and they had access to the documents. And that leads directly to the precedent that is on point in this case. That's the Danker case from the First District. I believe the court has the citation. If the court doesn't, it's 288 Illapthird 666. And there, the First District dealt with a very, very similar situation. There was alleged fraud involved from one of the principals, one of the minority shareholders of the company. The company eventually investigated that. There was a RICO action filed against the minority shareholder. And yet, the principal shareholder in that case waited for several years before it brought any sort of an action against the accountants involved in that case, alleging the accountants were involved in some sort of fraud. The First District made very clear, based on the language of the statute of limitations in Section 13-214.2, it was too late. It makes absolutely no difference when the plaintiff learns of the alleged fraud of the accountant or the alleged malpractice of the accountant. What matters is the standard interpretation of the discovery rule, which is, when did the plaintiff know that the plaintiff was injured? And when should the plaintiff have known or reasonably known of the injury, that the injury was wrongfully caused? That happened when the plaintiff, in this case, when the bank, learned of the fraud and learned of the scope of the fraud. At that point, the bank was on notice to investigate exactly what had happened in the underlying documentation. And the bank was given all of that documentation. This is not a case where the bank was kept away from it, where somehow the bank, it was hidden from the bank. And, in fact, if the court looks at the Danker case, that is more analogous to the behavior that the bank contends the accounting malpractice defendants took in this case. In Danker, the accountants did not turn documents over to the plaintiff. The plaintiff obtained those documents through the RICO action from the state's attorney that was involved, not from the accounting defendants. Here, the accounting defendants actively assisted the bank in the prosecution of that adversary proceeding, in opening its books to the bank, and in working with the bank to recover some of those proceeds, again, in the bankruptcy adversary proceeding. But, again, the fundamental point for this court concerns statutory interpretation. And, contrary, I disagree, unfortunately, with what my opposing counsel has said. This is an issue that has directly been addressed, not by the federal court, but by sister courts of this district. Danker has made this decision very clear. There is another case from the First District that reaches a similar result, Federated Industries, in 2010. These are new cases. Danker came down in 1996. There's no question that the interpretation of the discovery rule in the context of accounting malpractice cases is interpreted exactly the same way as any other interpretation of the discovery rule. When did the injury occur? And when was the plaintiff, on notice, knew or reasonably should have known of the actor omission at issue? Not, when did the plaintiff learn of the alleged malpractice of a specific actor? I hate to read extensively to the court, but I think that the language that the Supreme Court used in Nolan is so fundamentally on point with the necessary interpretation here, I ask the court's indulgence to read it. This is from Nolan, 85 ill second, 161. This is at pages 170 to 171. We wish to emphasize that the rule we announce is not the same as a rule which states that a cause of action accrues when a person knows or should know both of the injury and the defendant's negligent conduct. Not only is such a standard beyond the comprehension of the ordinary layperson to recognize, but it assumes a conclusion which must properly await legal determination. Moreover, if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests. That is exactly what the bank seeks to do. Let me ask a question. Separate and apart from seeing the original 2009 return, or the expectation that it was present when they reviewed the files, though apparently there's some dispute about that, when do you think the record shows that the bank should have known that something was wrong with the amended return? Separate and apart from comparing it to the original, but there's something wrong with the amended return. The bank should have known when the bank learned of the alleged fraud. That was in February of 2011. So if one thing is fraudulent, most of the stuff that comes from this company is fraudulent. That's what they would conclude. Not necessarily. That's not a bright-line rule. The distinction in this case is that the accounting defendants actually sent a letter to the bank, to the bank's representative in February of 2011, that specifically said in the accounting defendant's review of the documents, almost all of the documents, the banks, excuse me, the roads documents, tax documents, books, bear the indicia of fraud. That is the distinction. That letter doesn't draw attention to the 2009 return. It speaks with a broader brush, or writes with a broader brush. It certainly does, but it brushes all of these financial documents. It is certainly not limited just to a certain segment of documents. It is intended to advise the bank, there is rampant fraud here. And at that point, the bank had an obligation to investigate the scope of that alleged fraud. And the circuit court, excuse me, in this case made very clear, even if that weren't enough, and that should be enough, when the bank had the opportunity to review all of the files in this case, all of the accounting files, which everyone agrees the bank had the opportunity to do, by going to the defendant's offices, by reviewing those books, they still did not bring forward any sort of an action against the accounting defendants for more than three years. It was too late at that point. There is no question of fact here.  The circuit court reached the correct result, a result that has been reached in the same procedural posture by sister districts of this court. That ruling should be affirmed. If the judges have no further questions. I don't see any. Thank you, Ms. Wyler. Any rebuttal, Mr. Beckett? Yes. Counsel read from Nolan. That's nice. It was a case in 1981. The statute was passed in 1987. We spent a good deal of time in briefing talking about Moon v. Rohde. First I'm over here, and then I'm over here with Moon v. Rohde. But I think it ultimately comes down to what are the words of the statute? What are the words of the statute? Nolan doesn't help there. What are the words of the statute? Those federal courts didn't have to apply the statute. We have to apply the statute. Judge Foley has to apply the statute. This is the limitation statute for accountants. Why? Well, accountants are different. Under that theory, as soon as Mr. Nobach said, I've looked at this, and this 2009 amended tax return is fraudulent. Well, thank you, Mr. Nobach, we're now going to sue you. We're going to sue everybody. We're going to sue every accountant we possibly can. The legislature doesn't want that. We want to work with a scalpel, not a cleaver. And so you don't have to do that. What you need to do is know or should know that the accountant actually did something wrong that would provide for liability under the accountancy statute. That's what we say. Apply this statute. Counsel, I'm sorry to talk about fudging about the record. We didn't get to see all of their files. We got to see what he described as files and tax preparation files. Well, what are those? Do those include the tax returns? It doesn't say. And we couldn't see nonprivileged files. Well, what are those? Are those the tax returns that are in your file? We don't know. We do know this, that banks counsel did not see this tax return by his own We know that. That was a fact that was in the record. That was a fact that was ignored. That was a disputed fact for which we urge let's follow this statute. This is not the common law discovery rule. This is a statute of the state of Illinois that deals with accountancy actions. That's what we want the court to do. Well, I'm wondering, Mr. Beckett, in Moon, though, it seems like they kind of added to the language that was in the statute. I don't think they did. I think what they said was we previously had ruled that injury wrongful cause. All right? And all the courts have said this. And then the legislature acted. And so when the legislature acted, they knew what we meant because we had all these prior decisions. And so the words fit right into what we had ruled on before. Thank you, counsel. We'll take this matter under advisement and begin recess.